UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANE DOE**<br><br>**PLAINTIFF**<br>**VS.**<br><br>**DAVID N. MATLOCK, IN HIS INDIVIDUAL and OFFICIAL CAPACITY AS SECRETARY LOUISIANA DEP'T OF CHILDREN & FAMILY SERVICES; JOHN N. MACK**<br><br>**DEFENDANTS.** | **CIVIL ACTION NO. 24-849**<br><br>**JUDGE**<br><br>**MAGISTRATE** |

**COMPLAINT AND JURY DEMAND**

This is a civil rights action under 42 U.S.C. § 1983 and a tort action under Louisiana law involving Defendant John N. Mack's repeated rapes and sexual abuse of Plaintiff that were enabled by the failures and deliberate indifference of the policies, practices, and procedures of Defendant David N. Matlock and his predecessors at the Louisiana Department of Children and Family Services ("DCFS").

**I. JURISDICTION AND VENUE**

1. This Court's jurisdiction is based on 28 U.S.C. §§ 1343(3)&1330 for these causes of action arising under 42 U.S.C. §1983 *et seq.* This Court's supplemental jurisdiction over the claims arising under the laws of the State of Louisiana are based on 28 U.S.C. §1367(A) because those claims arise out of the same incidents giving rise to Plaintiff's federal law claims and form a part of the same case or controversy.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1)&(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Livingston Parish in the

Middle District of Louisiana, Defendant Mack resides at Louisiana State Penitentiary in the Middle District, and Defendant Matlock resides and works in the Middle District.

## II. PARTIES

### PLAINTIFF

3. At all times relevant to this action, Plaintiff, JANE DOE, was and is a resident of Livingston Parish, Louisiana. This action is brought anonymously to protect the identity of JANE DOE as this matter concerns the sexual assaults of JANE DOE when she was a minor.

### DEFENDANTS

4. DAVID N. MATLOCK, IN HIS INDIVIDUAL and OFFICIAL CAPACITY AS SECRETARY OF LOUISIANA'S DEPARTMENT OF CHILDREN AND FAMILY SERVICES, a person of full age and of majority, resident and domicile in East Baton Rouge Parish, who is the current Secretary of the Louisiana Department of Children and Family Services.

5. JOHN N. MACK, a person of full age and of majority, resides at Louisiana State Penitentiary in Angola, Louisiana, where he is currently incarcerated for the sexual assaults against Plaintiff.

## III. FACTS

6. From 2011-2019, when she was between the ages of 6 and 14, Plaintiff was repeatedly physically and sexually abused by JOHN MACK.

7. Plaintiff was abused dozens of times, mostly by Mack. Other times, Mack would traffic her to his friends.

8. Plaintiff, along with her older sister and mother, primarily lived in Mack's home. Mack continuously sexually assaulted her during this time.

9. Even when Plaintiff lived with others during this time, Mack would pick up Plaintiff and sexually assault her elsewhere.

10. In 2014, Plaintiff's sister reported to their aunt that Mack was abusing her.

11. The Louisiana Department of Children and Family Services (DCFS) was notified and requested that the sisters undergo forensic interviews.

12. Both Plaintiff and her sister participated in interviews conducted by CASA, while their abuser Mack, waited nearby.

13. These interviews, detailing the abuse allegations against Plaintiff's sister, were provided to DCFS.

14. Upon information and belief, the investigation concluded that the abuse was credible and/or Mack was a danger to Plaintiff and her sister.

15. DCFS failed to inform law enforcement of Plaintiff's abuse, her sister's abuse, and Mack's crimes. DCFS failed to make any criminal referral.

16. DCFS failed to remove Plaintiff from Mack's home and/or his access.

17. Because of DCFS's failures, the abuse persisted.

18. When she was approximately 12 years old, DCFS interviewed Plaintiff again about possible abuse by Mack. Plaintiff told DCFS that Mack had been sexually assaulting her for years and was continuing to do so.

19. DCFS failed to criminally report the abuse or Mack. DCFS failed to remove Plaintiff from Mack's access.

20. DCFS did assign a therapist to periodically meet with Plaintiff. Plaintiff informed the therapist about the sexual abuse. Plaintiff informed DCFS that Mack was still picking her up on the weekends and sexually assaulting her.

21. DCFS's therapist did not criminally report Mack, the abuse, or otherwise take steps to remove Plaintiff from Mack's access.

22. The DCFS therapist stopped visiting Plaintiff.

23. In 2019, when Plaintiff was 14 years old, New Orleans police received reports of a "possible sexual assault in Livingston Parish."

24. On September 23, 2021, Mack was taken into custody by Jefferson Parish Police Department and charged with sexual battery and released on September 27, 2021, on a bond of only $5,000.

25. On October 14, 2021, Mack was taken into custody by the Livingston Parish Sheriff's Office.

26. On February 9, 2022, a bill of indictment was issued by the 21st Judicial District Court in the Parish of Livingston, Louisiana, charging John Mack with eight felony counts, primarily related to crimes against minors, including multiple counts of aggravated rape, sexual battery, and indecent behavior with minors.

27. Mack was charged with multiple felonies, including three counts of first-degree rape against minors, three counts of battery involving improper touching of victims when they were under 13 years old, in violation of La. R.S. 14:43.1(C)(2), and two counts of indecent behavior with a juvenile, in violation of La. R.S. 14:81(H)(2).

28. District Attorney Scott Perrilloux recused himself due to the "politically sensitive nature of the case," citing claims from the Baton Rouge NAACP and others that justice could be compromised because of people in the Mack family who hold political positions, namely state Rep. Sherman Mack and Livingston Parish Councilmember Shane Mack, both nephews of John Mack.

29. The case proceeded to trial with the prosecution led by the Attorney General's Office, with Daniel Smart serving as the Assistant Attorney General.

30. In July 2023, Mack was convicted, and in October 2023 he was sentenced to life in prison for his crimes, including, aggravated/first-degree rape, attempted aggravated/first-degree rape; three counts of sexual battery of a victim under 13; and two counts of indecent behavior with a juvenile under the age of 13.

31. Previous DCFS Secretary Walters conducted an internal investigation.

32. Louisiana's Inspector General also conducted an investigation.

33. On November 10, 2023, after both investigations commenced, Walters submitted her resignation.

34. DCFS is the State Agency authorized to investigate alleged abuse/neglect when the alleged perpetrator is a parent, a caretaker as defined in Ch.C. Article 603, a person who maintains an interpersonal dating or engagement relationship with the parent/caretaker, or a person living in the same residence with the parent/caretaker as a spouse, whether married or not.

35. DCFS Child Welfare policy 4-105 states that "the purpose of the investigation is to determine whether abuse or neglect has occurred."

36. DCFS employees assigned to Plaintiff's case were inadequately trained and supervised and as a result of such inadequate training and supervision were deliberately indifferent to Plaintiffs' constitutional rights. DCFS employees' inadequate training and supervision were a result of DCFS's policies, practices, and procedures. DCFS's policies practices, and procedures equated to deliberate indifference. DCFS deprived Plaintiff of the most fundamental of human rights, notably the right and ability to be free from physical, sexual, or emotional injury or exploitation.

37. The DCFS employees also failed to follow department guidelines with respect to the handling of the investigation. DCFS acted with deliberate indifference to Plaintiff's rights.

38. According to an Audit conducted by the Louisiana Legislative Auditor, "from fiscal years 2009 through 2013 shows that DCFS did not always conduct its intake, alternative response (AR), and child protection investigation (CPI) activities in accordance with its policies and other requirements."

39. DCFS had validated sex abuse allegations against John Mack when Plaintiff was approximately seven years old and again when she was approximately 12 years old. DCFS's failures and deliberate indifference caused her to continue to be sexually abused by Mack for another seven years until she was 14, resulting in dozens more sexual assaults and incalculable trauma.

40. According to a 2022 Performance Audit by the Louisiana Legislative Auditor, DCFS's own employees informed the state auditor that DCFS's "supervisors, managers, and upper management" lacked involvement in the cases and lacked empathy in the subjects of the investigations.

41. In the audit, DCFS's employees commented: (1) "The most important issue is the lack of involvement and the lack of empathy from supervisors, managers, and upper management to staff members"; (2) "It is disheartening to go to people in leadership positions with concerns only to be told 'that is the way it is' and 'people can just find other jobs if they don't like it'; (3) "No support from manager, inconsistent directives, manager does not recognize efforts or give credit for a job well done, manager does not communicate only sends emails, manager does not know what to do and will give recommendations that are not within the guidelines of policy"; (4) "DCFS does not seem to care about its staff and the mental and emotional stress that this job brings"; (5) "Changes

that can be made to improve leadership within DCFS should start with promoting or hiring people who are qualified and are able to demonstrate the ability to get the job done effectively, not just to fill a position. Changes need to happen with the staff at the top who are making horrible decisions that impact the people who are actually in the field doing the work"; (6) "The caseload standards and job expectations are unrealistic – workers are set up for failure from the start with the amount of work there is and the requirements"; (7) "We need proper and department-specific training and education to do the job"; (8) "The few workers who are still here are stressed, burned out, and overworked"; (9) "I feel that when I started in my current position there was no type of training to prepare you for the job"; (10) "Survey respondents reported they experienced unprofessional behavior more frequently than retaliatory behavior or pressure to do things against policy."; (11) "Pressure to change documents so that a child could be placed, instead of searching for a more appropriate placement"; and (12) "DCFS doesn't foster a culture that promotes the welfare of children because of accountability".

42.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered significant trauma, emotional distress, post-traumatic stress disorder, been in and out of psychiatric facilities, engaged in self-harm, attempted suicide, and experiences suicidal ideations.  Plaintiff has been hospitalized repeatedly for mental health issues.  Plaintiff has difficulty trusting others and forming healthy relationships.  Plaintiff has been diagnosed as bipolar, severe depression, disruptive mood dysregulation disorder, post-traumatic stress disorder, impulse control disorder, oppositional defiant disorder, generalized anxiety disorder, and panic disorder.

## IV. CAUSES OF ACTION

### COUNT I: 24 U.S.C. § 1983 – VIOLATION OF FOURTEENTH AMENDMENT RIGHTS

43. All previous paragraphs of this Petition hereby are incorporated by reference as if stated in full herein.

44. Through the conduct described above, Defendants, acting under color of state law, unlawfully deprived Petitioner of her constitutional rights under the Fourteenth Amendment to reasonable care and maintenance, freedom from abuse or neglect, to be free from sexual abuse by her caregivers and the opportunity to grow in a safe and stable environment.

45. Plaintiff alleges that the acts, policies, practices, procedures, and/or omissions of Defendants, constituting reckless, grossly negligent, and/or deliberate disregard described herein were proximately and legally caused by Defendants' failures, which include but are not limited to the following causes of action/theories of liability:

   a. Failure to take prompt and effective action to stop and prevent the recurrence of sexual assaults of Plaintiff.

   b. Failing to timely and promptly investigate evidence or inquiries of unconstitutional misconduct in the nature of sexual harassment, sexual assault, sexual battery, and violations of their right to personal security and bodily integrity;

   c. Failing to assure adequate staff training with regard to maintaining, preserving, and protecting children from sexual assault, sexual battery, and violations of their right to personal security and bodily integrity;

   d. Failing to supervise staff to ensure proper supervision and control;

   e. Creation of and/or contribution to the dangerous situation involving substantial risk of harm;

   f. Deliberate indifference to the safety of Plaintiff with knowledge of the potential danger that shocks the conscience;

   g. Failure to take obvious steps to avoid or address the known danger over a protracted period of opportunity;

      h.   Failure to adhere to departmental policies and procedures;

      i.   Failure to administer policies/procedures;

      j.   Negligent hiring;

      k.   Failure to train;

      l.   Failure to supervise;

      m.   Failure to terminate; and

      n.   Failing to protect Plaintiff from harm;

46.    The acts and/or omissions described above were done pursuant to an official policy, or lack thereof, promulgated with deliberate indifference to the known or obvious consequences that constitutional violations, including the intentional battery and sexual abuse of children, including Plaintiff, would occur, and which were the moving force resulting in the deprivation of Plaintiff's constitutional rights and resulting damages.

47.    Defendants, their agents, and employees, while acting under color of law and in the course and scope of their employment, violated and/or deprived Plaintiff of her civil rights under 42 USC § 1983, and of due process under the Fourteenth Amendment to the Constitution of the United States, including, but not limited to her right to personal security, bodily integrity and to be free from sexual abuse, while acting under color of law.

48.    The nature of the relationship became custodial by virtue of the authority and power of their offices. Defendants' duties included both custody and protection from state-created danger. Defendants are not entitled to qualified immunity for these acts, because these rights were already clearly established statutorily and jurisprudentially, at the time of these offenses. *See Ingrahm v. Wright*, 430 U.S. 651, 680, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S., 109 S. Ct. 998,

103 L. Ed. 2d 249 (1989); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982) ("If the state puts a man in a position of danger from private persons then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." at 618). Defendants had sufficient notice of the illegality of their conduct.

## COUNT II: STATE LAW CLAIMS AGAINST DEFENDANT MACK

49. Plaintiff realleges the allegations contained above as if fully restated herein.

50. Defendant MACK, by a show of force and/or violence, intended to cause an offensive or harmful physical contact with Plaintiff.

51. Defendant MACK, by a show of force or violence, did cause an offensive or harmful physical contact with Plaintiff.

52. Defendant MACK'**S** offensive or harmful contact occurred without Plaintiff's consent.

53. Plaintiff was injured as a result of the sexual battery upon her by Defendant MACK.

54. Defendant MACK's actions violate state law, including but not limited to, negligence, intentional misconduct, intentional infliction of emotional distress, negligent infliction of emotional distress, and other state laws.

55. Plaintiff is entitled to an award of compensatory, punitive, and exemplary damages in an amount to be determined by the jury, and recoverable from Defendant MACK for the assaults committed by him and for the injuries and damages suffered by Plaintiff.

## V. DAMAGES

56. Plaintiff has suffered and will continue to suffer the following damages, injuries and losses as a direct and proximate results of Defendants' aforementioned misconduct:

    a. mental pain, suffering, anguish, and embarrassment;

    b. extreme humiliation and adverse notoriety;

    c. loss of self-esteem;

    d. current and future medical treatment, psychiatric treatment and/or psychological counseling;

    e. past and future physical pain and suffering;

    f. past and future mental anguish;

    g. loss and impairment of life's pleasures;

    h. loss of enjoyment of life;

    i. legal expenses and/or other costs;

    j. punitive damages;

    k. reimbursement of court costs and expert fees; and

    l. other economic damages and losses as will be proven at trial.

## VI.  REQUEST FOR JURY TRIAL

57. Plaintiff respectfully requests a trial of jury for all matters herein.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jane Doe, prays that, after due proceedings, judgment be entered in favor of Plaintiff and against all Defendants, jointly and *in solido,* and that this Court:

    a. Award Plaintiff all compensatory damages reasonable under the circumstances;

    b. Award Plaintiff punitive damages against all Defendants for each applicable count alleged in this Petition;

    c. Award Plaintiff reasonable attorney's fees, expert fees, and court costs under 42 U.S.C. §1988 for the prosecution of her 42 U.S.C. §1983 claims;

    d. Award Plaintiff reasonable attorney's fees and court costs under state law for the prosecution of state law claims;

    e. Award Plaintiff legal interest on all damages awarded from the date of judicial demand until paid; and

    f.  Award Plaintiff such other and further relief that this Court deems just and proper.

New Orleans, Louisiana, this 14th day of October, 2024.

                Respectfully submitted,

                /s/Soren E. Gisleson
                **SOREN E. GISLESON, ESQ. (La. Bar. No. 26302)**
                *Herman Katz Gisleson, & Cain, L.L.C.*
                909 Poydras St., Suite 1860
                New Orleans, Louisiana 70112-4060
                Telephone: (504) 680-0596
                Facsimile: (504) 561-6024
                soren@hkgclaw.com
                ***ATTORNEY FOR PLAINTIFF***