UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JANE DOE                                                                CIVIL ACTION

VERSUS

DAVID N. MATLOCK, ET AL.                                NO. 24-00849-BAJ-RLB

### RULING AND ORDER

Before the Court is Defendant's **Rule 12(b) Motion To Dismiss By Defendant, David N. Matlock, In His Individual And Official Capacity As Secretary Of DCFS (Doc. 12).** The Motion is opposed. (Doc. 15). Defendant filed a Reply Brief. (Doc. 16). For the reasons stated herein, the Motion is **GRANTED IN PART** and **DENIED IN PART, WITHOUT PREJUDICE.**

### I.  BACKGROUND

This case arises out of repeated and sustained sexual abuse that Plaintiff endured as a minor. (Doc. 1). Plaintiff alleges that from 2011 to 2019, between the ages of 6 and 14, Defendant John N. Mack repeatedly physically and sexually abused her. (*Id.* at ¶ 6). Mack also allegedly trafficked Plaintiff to his friends to abuse her. (*Id.* at ¶ 7).

In October 2023, Mack was sentenced to life in prison for his crimes, including aggravated first degree rape, attempted aggravated first degree rape, three counts of sexual battery of a victim under 13 years of age, and two counts of indecent behavior with a juvenile under the age of 13. (*Id.* at ¶ 30).

Plaintiff alleges that the Louisiana Department of Children and Family

Services ("DCFS") was notified regarding Mack's abuse of Plaintiff. (*Id.* at ¶ 11). DCFS allegedly had validated sexual abuse allegations against Mack when Plaintiff was approximately 7 years old, and again when Plaintiff was approximately 12 years old. (*Id.* at ¶ 29). Plaintiff alleges that DCFS's failures and deliberate indifference caused her to continue to be sexually abused by Mack for another 7 years until she was 14 years old, resulting in dozens more sexual assaults and incalculable trauma. (*Id.* at ¶ 39).

According to a 2022 Performance Audit by the Louisiana Legislative Auditor, DCFS's own employees allegedly informed the state auditor that DCFS's "supervisors, managers, and upper management" lacked involvement in the cases and lacked empathy in the subjects of the investigations. (*Id.* at ¶ 40). In the audit, DCFS's employees allegedly commented:

> (1) "The most important issue is the lack of involvement and the lack of empathy from supervisors, managers, and upper management to staff members";
>
> (2) "It is disheartening to go to people in leadership positions with concerns only to be told 'that is the way it is' and 'people can just find other jobs if they don't like it'";
>
> (3) "No support from manager, inconsistent directives, manager does not recognize efforts or give credit for a job well done, manager does not communicate only sends emails, manager does not know what to do and will give recommendations that are not within the guidelines of policy";
>
> (4) "DCFS does not seem to care about its staff and the mental and emotional stress that this job brings";
>
> (5) "Changes that can be made to improve leadership within DCFS should start with promoting or hiring people who are qualified and are able to demonstrate the ability to get the job done effectively,

not just to fill a position. Changes need to happen with the staff at the top who are making horrible decisions that impact the people who are actually in the field doing the work";

(6) "The caseload standards and job expectations are unrealistic – workers are set up for failure from the start with the amount of work there is and the requirements";

(7) "We need proper and department-specific training and education to do the job";

(8) "The few workers who are still here are stressed, burned out, and overworked";

(9) "I feel that when I started in my current position there was no type of training to prepare you for the job";

(10) "Survey respondents reported they experienced unprofessional behavior more frequently than retaliatory behavior or pressure to do things against policy.";

(11) "Pressure to change documents so that a child could be placed, instead of searching for a more appropriate placement"; and

(12) "DCFS doesn't foster a culture that promotes the welfare of children because of accountability".

(*Id.* at ¶ 41).

Plaintiff alleges that as a result of Defendants' conduct, Plaintiff suffered significant trauma, emotional distress, and post-traumatic stress disorder. (*Id.* at ¶ 42). Plaintiff alleges that she has "been in and out of" psychiatric facilities, engaged in self-harm, attempted suicide, and experiences suicidal ideations. (*Id.*). Plaintiff has allegedly been hospitalized repeatedly for mental health issues. (*Id.*). Plaintiff alleges that has difficulty trusting others and forming healthy relationships. (*Id.*). Plaintiff has allegedly been diagnosed with bipolar disorder, severe depression, disruptive mood dysregulation disorder, post-traumatic stress disorder, impulse

control disorder, oppositional defiant disorder, generalized anxiety disorder, and panic disorder. (*Id.*).

## II. PROCEDURAL HISTORY

On October 14, 2024, Plaintiff filed suit against David N. Matlock, in his individual and official capacity as Secretary of DCFS, and against John N. Mack, her abuser. (Doc. 1). Plaintiff asserts the following causes of action: (1) violation of Fourteenth Amendment rights, through 24 U.S.C. § 1983, against Defendant Matlock; and (2) state law claims against Defendant Mack. (Doc. 1).

Now, Defendant Matlock asks the Court to dismiss Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 12).

## III. LEGAL STANDARD

The Government argues that the Court lacks subject matter jurisdiction to adjudicate this case. "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig*, 668 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States,*

4

960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

5

facts").

## IV. DISCUSSION

Defendant Matlock seeks to dismiss Plaintiff's claims against him for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Doc. 12). The Court will begin with the jurisdictional challenge and then proceed to the merits of Plaintiff's claims against Defendant Matlock.

### A. Subject Matter Jurisdiction Over Official Capacity Claim Under Rule 12(b)(1).

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claim against Matlock in his official capacity based on sovereign immunity under the Eleventh Amendment. (Doc. 12-1 at 1). Plaintiff does not appear to oppose Defendant's argument regarding the Court's jurisdiction to adjudicate Plaintiff's claim against Defendant in his official capacity. (*See generally* Doc. 15).

Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law. *Parker v. La. Dep't of Pub. Safety and Corr.*, No. CV 18-1030-JWD-EWD, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing 42 U.S.C. § 1983) (additional citations omitted). The United States Supreme Court has held that a state is not a "person" against whom a § 1983 claim for money damages can be asserted. *Parker*, 2020 WL 4353564, at *8. "This rule extends to 'arms of the state,' and to a *state's 'officials acting in their official capacities.'" Id.*; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)

6

("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

Here, Defendant Matlock cannot be sued in his official capacity under Section 1983. Courts have held that "DCFS is an arm of the state." 500 F. Supp. 3d 527, 543 (E.D. La. 2020) (citing *Lexing v. Edwards*, Civ. A. No. 17-1092, 2018 WL 2350650, at *8 (W.D. La. Apr. 30, 2018); *Cummings v. La. Dept. Child. & Fam. Servs.*, Civ. A. No. 14-3362, 2015 WL 5015311, at *1 n.2 (W.D. La. Aug. 21, 2015); *Schannette v. Doxey*, Civ. A. No. 2:12-CV-01416, 2013 WL 4516041, at *4 (W.D. La. Aug. 22, 2013); *Harmony Center, LLC v. Jindal*, Civ. A. No. 10-621, 2010 WL 4955167, at *3 (M.D. La. Nov. 30, 2010)). As an arm of the state, DCFS is not a "person" who can be sued under Section 1983. This applies, by extension, to Defendant Matlock in his official capacity as Secretary of DCFS. Thus, Plaintiff's Section 1983 claim is barred against Defendant in his official capacity.

Accordingly, it is ordered that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED IN PART**. Plaintiff's claim against Defendant Matlock, in his official capacity, are **DISMISSED WITHOUT PREJUDICE**.[1]

---

[1] "Ordinarily, when a complaint is dismissed for lack of jurisdiction, [] it should be without prejudice." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024) (citing *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 452 (5th Cir. 2022) (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020)).

## B. Merits of Plaintiff's Individual Capacity Claim Under Rule 12(b)(6).

Defendant Matlock argues that Plaintiff fails to state a plausible Section 1983 claim against him, in part, because he is entitled to qualified immunity in his individual capacity. (Doc. 12-1 at 1). Defendant argues that he is entitled to qualified immunity because his conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. (*Id.* at 7).

Plaintiff responds that Defendant is not entitled to qualified immunity because his policies and failure to train and supervise violated Plaintiff's clearly established constitutional right to be free from sexual assault. (Doc. 15 at 1). Plaintiff contends that "[c]hildren, like Plaintiff, who were removed from their home and placed in foster care have a 'special relationship' with the state that triggers Fourteenth Amendment due process protections." (*Id.* at 10 (citing *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 249–50 (5th Cir. 2018)). Plaintiff argues that, as a foster child at the time of the alleged sexual abuse, she states a plausible substantive due process claim because she has adequately alleged that a state agency's practices put her at an unreasonable risk of physical or severe emotional harm. (Doc. 15 at 10). Plaintiff cites several cases involving foster children as jurisprudential support for her argument. (*Id.* at 10–14).

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v.*

8

*Creighton*, 483 U.S. 635, 638 (1987)). "In determining whether an official enjoys immunity, [courts] ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the second prong of the analysis, "'[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam) (alterations and internal quotation marks omitted)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 584 U.S. at 104 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela*, 584 U.S. at 104 (quoting *White*, 580 U.S. at 79 (internal quotation marks omitted)). "In other words, immunity

9

protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 584 U.S. at 104 (quoting *White*, 580 U.S. at 79 (internal quotation marks omitted)).

Here, the Court must determine whether Plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right. Plaintiff alleges that Defendant deprived her of the most fundamental of human rights, notably the right and ability to be free from physical, sexual, or emotional injury or exploitation. (Doc. 1 at ¶ 36). The Court thus turns to precedent to determine whether the right is clearly established such that it is "beyond debate."

In *M. D. by Stukenberg v. Abbott*, the United States Court of Appeals for the Fifth Circuit considered an appeal of the district court's ruling following a bench trial in a Section 1983 class action. 907 F.3d 237, 243 (5th Cir. 2018). The class consisted of minor children alleging that the State's maintenance of its foster care system exposed them to a serious risk of abuse, neglect, and harm to their physical and psychological well-being. *Id.* There, the Circuit sought to determine whether the children demonstrated that they were deprived of a "cognizable constitutional right[.]" *Id.* at 248. The Circuit ultimately concluded that "egregious intrusions on a child's emotional well-being—such as, for example, persistent threats of bodily harm or aggressive verbal bullying—are constitutionally cognizable." *Id.* at 251.

The Circuit emphasized, however, that "[a]s a general matter, the State is under no affirmative obligation to protect its citizen from private harm." *Id.* at 248 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).

But when the state assumes certain custodial roles with respect to an individual, it creates a "special relationship" that imparts to the state a limited duty to provide for that person's safety and general well-being. *M.D.*, 907 F.3d at 249 (citing *DeShaney*, 489 U.S. at 197).

The Fifth Circuit has held that a "special relationship" exists between the state and children when the state "remove[s] them from their natural home and place[s] them under state supervision." *M.D.*, 907 F.3d at 249 (citing *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990)) (additional citations omitted). Having taken custody of a child, the State "assume[s] the responsibility to provide for constitutionally adequate care." *M.D.*, 907 F.3d at 249 (citing *Griffith*, 899 F.2d at 1439; *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012); *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 880 (5th Cir. 2004)). The Fifth Circuit has defined the substantive due process right enjoyed by children in the custody of the state's foster care system as a right to "personal security and reasonably safe living conditions." *M.D.*, 907 F.3d at 249 (citing *Hernandez*, 380 F.3d at 880).

Although it is clear under Fifth Circuit precedent that Plaintiff's custody status is relevant to the Court's inquiry, it is unclear from Plaintiff's Complaint whether she was in foster care at the time of the events alleged in the Complaint, although she argues in her Opposition Brief that she was a foster child. (Doc. 1; Doc. 15). Plaintiff alleges, in relevant part:

> Plaintiff, along with her older sister and mother, primarily lived in Mack's home. Mack continuously sexually assaulted her during this

11

...

time. (Doc. 1 at ¶ 8).

Even when Plaintiff lived with others during this time, Mack would pick up Plaintiff and sexually assault her elsewhere. (*Id.* at ¶ 9).

DCFS failed to remove Plaintiff from Mack's home and/or his access. (*Id.* at ¶ 16).

DCFS did assign a therapist to periodically meet with Plaintiff. Plaintiff informed the therapist about the sexual abuse. Plaintiff informed DCFS that Mack was still picking her up on the weekends and sexually assaulting her. (*Id.* at ¶ 20).

DCFS is the State Agency authorized to investigate alleged abuse/neglect when the alleged perpetrator is a parent, a caretaker as defined in Ch.C. Article 603, a person who maintains an interpersonal dating or engagement relationship with the parent/caretaker, or a person living in the same residence with the parent/caretaker as a spouse, whether married or not. (*Id.* at ¶ 34).

The nature of the relationship became custodial by virtue of the authority and power of their offices. Defendants' duties included both custody and protection from state-created danger. Defendants are not entitled to qualified immunity for these acts, because these rights were already clearly established statutorily and jurisprudentially, at the time of these offenses. *See Ingrahm v. Wright*, 430 U.S. 651, 680, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977); *White v. Rochford,* 592 F.2d 381 (7th Cir. 1979); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S., 109 S. Ct. 998 (1989); *Bowers v. DeVito,* 686 F.2d 616 (7th Cir. 1982) ("If the state puts a man in a position of danger from private persons then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." at 618). Defendants had sufficient notice of the illegality of their conduct. (*Id.* at ¶ 48).

Based on these allegations, Plaintiff's custody status is unclear. Because this case is in its infancy, and because Plaintiff alleges quite egregious harm, the Court will grant Plaintiff leave to amend her Complaint to address her custody status during the relevant time period. Federal Rule of Civil Procedure Rule 15(a)(2) provides: "a party may amend its pleading only with the opposing party's written

12

consent or the court's leave. The court should freely give leave when justice so requires." Courts have liberally construed Rule 15(a)(2) in favor of amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) ("the liberal position of the federal rules on granting amendments . . . evinces a bias in favor of granting leave to amend"). The decision to grant leave is within the sound discretion of the court. *Louisiana v. Bank of Am. Corp.*, No. CV 19-638-SDD-SDJ, 2020 WL 3966875, at *2 (M.D. La. July 13, 2020).

Here, discovery is not yet underway and there is no Scheduling Order in place. (Doc. 20). The Magistrate Judge ordered the parties to contact the Court upon resolution of the instant Motion to Dismiss for the entry of a Scheduling Order. (*Id.*). Thus, Defendant will not be prejudiced by this amendment. The Court exercises its discretion to permit Plaintiff leave to amend her Complaint within 21 days of the issuance of this Ruling and Order.

Accordingly, Defendant's Motion is **DENIED WITHOUT PREJUDICE** in all other respects. Defendant shall respond to Plaintiff's Amended Complaint in the normal course.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Rule 12(b) Motion To Dismiss By Defendant, David N. Matlock, In His Individual And Official Capacity As Secretary Of DCFS (Doc. 12)** is **GRANTED IN PART** and **DENIED IN PART, WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant

Matlock, in his official capacity, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall **AMEND** her Complaint within 21 days of the issuance of this Ruling and Order.

Baton Rouge, Louisiana, this 22nd day of September, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**